***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Hall.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. The date of the injury, which is the subject of this claim, is June 26, 2008. *Page 2 
2. On such date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On such date, an employment relationship existed between Plaintiff and Employer-Defendant.
4. On such date, Employer-Defendant employed three or more employees.
5. Employer-Defendant is insured by Broadspire.
6. Employee-Plaintiff's average weekly wage is $1,332.51.
7. Employer-Defendant accepted Employee-Plaintiff's claim.
8. Plaintiff's issues for hearing:
 a. What benefits is Plaintiff entitled to?
9. Defendants' issues for hearing:
 a. Whether Plaintiff justifiably refused Defendants' return to work offer.
 ***********
The following were marked and received into evidence by the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibit 1 — IC forms; motions, orders, and correspondence; discovery; medical records; and vocational records.
 ***********
Based upon all of the competent, credible evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was 56 years old as of the date of the hearing before the Deputy Commissioner. He obtained a GED in approximately 1974. Plaintiff's work experience is *Page 3 
comprised primarily of truck driving, which he has done for 28 to 29 years for a number of employers.
2. On June 26, 2008, Plaintiff suffered a work-related injury when a piece of furniture he was unloading from a truck struck his right knee, dislocating his right kneecap. Defendants accepted Plaintiff's injury as compensable on July 22, 2008 through the filing of a Form 60. Plaintiff began receiving indemnity benefits on July 22, 2008.
3. Plaintiff was treated with physical therapy and injections before undergoing arthroscopic surgery in December 2008. Plaintiff's condition did not improve following surgery, and on or about October 21, 2011, Plaintiff underwent an independent medical examination (IME) with Dr. Matthew Olin, who subsequently became Plaintiff's treating physician. Dr. Olin determined that Plaintiff had post-traumatic arthritic changes in his right knee following arthroscopy which had failed to improve with conservative care and the passage of time. He recommended that Plaintiff undergo a partial patellofemoral arthroplasty, which he performed on January 26, 2010.
4. Plaintiff underwent a Functional Capacity Exam (FCE) on June 22, 2010. The report generated in conjunction with the FCE indicated, among other things, that Plaintiff could tolerate sitting for 60 minutes at a time, and standing for 57 minutes at a time. The report also indicated that Plaintiff could sit for a total of five to six hours per day.
5. On June 24, 2010, Dr. Olin pronounced Plaintiff at maximum medical improvement and assigned an impairment rating of 45% to Plaintiff's right knee. Dr. Olin also assigned permanent work restrictions of no lifting greater than 50 pounds, no bending, stooping, or squatting to "left" or "lift" (it is unclear from Dr. Olin's handwriting whether he intended to write "left" or "lift") and no kneeling. Next to the section of the record containing Plaintiff's *Page 4 
restrictions, Dr. Olin clearly wrote "as limited by the FCE to medium work load."
6. On July 26, 2010, Defendant-Employer offered Plaintiff a position as road driver performing "backhauls." The position offered the same pay as Plaintiff had previously earned working for Defendant-Employer and did not involve loading or unloading trucks. The job description did not indicate the total number of hours of driving the position required each day, or how frequently the employee filling the position would be permitted to take breaks.
7. On July 16, 2010, Plaintiff's vocational expert, Michael Fryar, performed an initial vocational assessment of Plaintiff. On August 11, 2010, Mr. Fryar completed an on-site job analysis during which he met with Defendant-Employer's Senior Dispatcher/Trucking Supervisor, William Townsend, Defendant-Employer's Human Resource Manager, Scott Carpenter, and Defendant-Employer's Warehouse and Fleet Manager, Chris Hudson. Due to the inconsistencies he identified between the job requirements and Plaintiff's restrictions, Mr. Fryar and Plaintiff sought Defendants' permission to make an appointment with Dr. Olin to discuss the job description as required by the policy of Dr. Olin's practice. Defendants did not authorize the appointment. Ms. Ratliff also did not determine whether Dr. Olin would have found the position medically safe for Plaintiff.
8. Mr. Fryar testified that he determined Plaintiff was unable to work in any job following the initial vocational assessment, on or about July 17, 2010. This determination was based upon Mr. Fryar's conclusion that Plaintiff's physical restrictions prevented him from driving a truck, and his limited education and work experience and lack of transferrable skills precluded him from obtaining other employment.
9. In concluding that Plaintiff could no longer work in the capacity of a truck driver, Mr. Fryar noted that any problems Plaintiff had with his right leg becoming stiff or immovable *Page 5 
would affect his ability to safely operate a truck, which, in turn, would constitute a violation of Federal Motor Carrier Safety Administration regulations. With respect to Plaintiff's restrictions of no bending, stooping or squatting, Mr. Fryar opined that this would prevent Plaintiff from performing DOT mandated inspections of the truck he was driving. Furthermore, with respect to Plaintiff's need to alternate sitting and standing every 60 minutes and to limit his sitting to five or six hours per day, Mr. Fryar noted that these restrictions could interfere with delivery schedules. He opined that allowing Plaintiff extra time to complete a trip would not be a reasonable accommodation that other employers in the competitive labor market would make because, "it's an essential duty for someone to sit and drive."
10. With respect to the specific truck driving position offered to Plaintiff by Defendant-Employer, Mr. Fryar opined that the requirements of the job were inconstant with the restrictions contained in the FCE, and Dr. Olin's notes and return to work form. In particular, Mr. Fryar noted that the job offered to Plaintiff required substantially more sitting per day, 11 hours according to Defendants' vocational expert, Amanda Ratliff, than the five to six hours per day Plaintiff was allowed to sit pursuant to the FCE.
11. 12. Defendants' vocational expert, Amanda Ratliff, completed a job evaluation for the position offered to Plaintiff on October 18, 2010. In evaluating the job, Ms. Ratliff reviewed Dr. Olin's work restrictions and the written job description, and performed an on-site review of the position. Ms. Ratliff did not review Plaintiff's IME. In her report, Ms. Ratliff indicated that the job required occasional slight bending to hook and unhook the load, no or occasional crouching, and no kneeling. She also noted that the position required continuous sitting and indicated that the employee filling the position would be required to drive 11 hours per day. When asked during her deposition whether she was told that the 11 hours of driving *Page 6 
required by the position would include the driver's breaks, Ms. Ratliff stated, "Well, no they didn't specifically say that." With respect to breaks from driving, Ms. Ratliffe was informed that Plaintiff would be able to take breaks as needed, "as long as he got to where he needed to go."
13. Dr. Olin was deposed on February 3, 2011. He opined that Plaintiff's testimony that his knee becomes painful and stiff after sitting for an extended period of time was reasonable based upon his injury and surgery, and he agreed that, if Plaintiff experienced those symptoms in his leg while driving, it could have a detrimental effect on his ability to operate a truck safely. Dr. Olin also agreed that the fact that the FCE limited Plaintiff's use of his right foot to "frequent" use, which is defined as 2.5 to 5.5 hours per day, suggested that Plaintiff was not capable of driving a truck for 11 hours per day. With respect to the job offered to Plaintiff by Defendant-Employer, Dr. Olin opined that it fit Plaintiff's restrictions in every respect except the amount of time Plaintiff would be required to sit. When asked whether Plaintiff should at least attempt a job involving periods of driving interspersed with periods of not driving, and requiring no loading, Dr. Olin expressed concern that Plaintiff might not be able to meet time constraints due to the need to take breaks from driving.
14. The evidence of record does not show that Defendants would have accommodated Plaintiff's five to six hour per day overall limit on driving or the requirement that he take a break from driving every 60 minutes. Defendants' own vocation expert determined that the position required 11 hours of driving per day. Furthermore, although Defendant-Employer indicated that Plaintiff would be able to take breaks as needed, this was conditioned on Plaintiff "[getting] to where he needed to go." The reasonable inference to be drawn from this, which was noted by both Mr. Fryar and Dr. Olin, is that there were deadlines for the delivery of the loads Plaintiff would be transporting, and comporting with his restrictions could prevent him from meeting *Page 7 
those deadlines.Finally, Mr. Fryar testified that, even if Defendant-Employer had accommodated Plaintiff's restrictions, based his extensive experience with trucking companies, such a request would not be honored by any other employer as it is well beyond a reasonable accommodation. In light of the foregoing, the Full Commission finds that Plaintiff did not unjustifiably refuse the position offered to him by Defendant-Employer on July 26, 2010.
15. After declining the position with Defendant-Employer, Plaintiff did not seek other work due to his belief that he was not capable of performing any work other than driving a truck and his belief that no one would hire him due to his disability. Although Plaintiff failed to demonstrate through medical testimony that he is incapable of working in any employment, the Full Commission finds that, based on Plaintiff's physical restrictions, lack of education, and limited work experience, it would be futile for Plaintiff to seek other employment, and, as such, Plaintiff is totally disabled16. Plaintiff's average weekly wage of $1,332.51 as stipulated by the parties was sufficient to generate the maximum compensation rate for 2008 of $786.00.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident to his right knee on June 26, 2008. N.C. Gen. Stat. § 97-2.
2. Defendant admitted the compensability of Plaintiff's injury by accident by filing a Form 60 on July 22, 2008. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with Plaintiff. Sims v.Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied, *Page 8 353 N.C. 729, 550 S.E.2d 782 (2001).
3. In order to meet the burden of proving disability, Plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by Plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than her pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution,108 N.C. App. 762, 425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets his burden of showing disability, the burden shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations.Demery v. Perdue Farms., Inc., supra.
4. In the instant case, Plaintiff has met his initial burden to show that, due to his knee condition, he is disabled from any employment through the production of evidence that it would be futile for Plaintiff to seek employment comporting with his physical restrictions due to his limited education and work experience. Russell v. Lowes ProductDistribution, supra.
5. Defendants have not shown that suitable jobs are available for Plaintiff and that Plaintiff is capable of obtaining a suitable job, taking into account Plaintiff's physical limitations. *Page 9 Demery v. Perdue Farms, Inc., supra.
6. Plaintiff did not unjustifiably refuse suitable employment with Defendant-Employer. N.C. Gen. Stat. § 97-32.
7. As a result of Plaintiff's injuries, he was disabled and is entitled to have Defendants pay ongoing total disability compensation at a rate of $786.00 per week continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
8. Plaintiff's average weekly wage of $1,332.51, as stipulated by the parties, yields the maximum compensation rate for injuries occurring in 2008 of $786.00. N.C. Gen. Stat. § 97-29.
9. Plaintiff is entitled to have Defendants pay for medical expenses incurred or to be incurred which are reasonably related to his work injury and reasonably required to effect a cure, to give relief, and/or to lessen his period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee provision below, Defendants shall continue to pay to Plaintiff temporary total disability benefits in the amount of $786.00 per week until Plaintiff returns to work or further Order of the Commission.
2. Defendants shall pay for medical expenses incurred or to be incurred which are reasonably related to his work injury and reasonably required to effect a cure, to give relief, and/or to lessen his period of disability.
3. A reasonable attorney fee of 25% of the compensation due Plaintiff under *Page 10 
paragraph 1 of this Award is approved for Plaintiff's counsel and shall be paid by Plaintiff's counsel receiving every fourth compensation check due Plaintiff.
4. Defendants shall pay the costs.
This the ___ day of October, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1